will be on 19-8036 United States v. Coombs May it please the Court, Counsel. Megan Hayes appearing on behalf of Jackson Coombs. The Supreme Court's decision in this court's Archuleta decision require reversal when a sentence is premised on either legal or factual errors. In this case the district court made both legal and factual errors when it applied a two-level enhancement for more than minimal planning to Mr. Coombs's aggravated assault conviction. This is the case where a woman, Mr. Coombs assaulted a woman in a public restroom in Yellowstone Park. The legal error that we're contending the district court made was an incorrect interpretation and application of the more than minimal planning enhancement which according to the guidelines requires a couple of things. More than is typical to commit the offense in its simple form. It exists if there were significant affirmative steps taken to conceal the offense. According to this court's decision in Archuleta it requires complex criminal activity. This case was not complicated. It was easily detected and therefore we're contending that there was no more than minimal planning involved. The guidelines speak in terms of and you can correct me I won't take the time to really pull it up here but it talks about more complex than in its simplest form right that's that's the the predicate for the enhancement. That's correct. Okay well most of the cases at least if not all of the cases that you cite occur in the context of white collar crime and in those cases which is where those cases that enhancement is generally used one can accept that as being a given but I mean and in those cases you're gonna have to be more complex because in its simplest form this fraud offense is going to be somewhat complex. So why does that really help you? Because in its simplest form I can come up and knock somebody in their head at that you know that's its simplest form I assaulted that person. And so when I choose to put tissue paper over my face to do it I'm doing something more than in its simplest form to effectuate that crime. Am I not? Yes you are but the the distinction is and I agree that the white collar crime cases do necessarily involve more complicated activity. Archuleta was one where they said it wasn't. It was easily detected this is a drug addict but I did find I in preparing for this oral argument I actually did find a Tenth Circuit case where an aggravated assault where the more than minimal planning enhancement was applied to an aggravated assault. It's unpublished 728 Federal Appendix 810 that's a Tenth Circuit case from 2018 in in that case this was an assault in Indian country hate to use that term but that's that's what's the term in the statute and in it and for the record let's get a 28 J on this after this proceedings this is not in your brief right? This case? That's correct I just found it last night yes and I'm sorry it's unpublished and I had that's okay go ahead it's a 2018 case this is a defendant who planned his attack in advance he got his girlfriend to drive him to a location then he told her let me take the wheel for a while he pulled out a knife he drove her to a secluded area he told her to take off all her clothes and he put her in the trunk then he drove to I mean it was quite a bit of advanced preparation to then ultimately drive her to a wooded secluded area and assault her and you infer from that what more than minimal planning well that's a that's a necessary and sufficient problem sure that was sufficient for more than minimal planning it doesn't say that was necessary for more than minimal planning right no no it didn't say that but it did it is an example your honor of a case where the crime was was premeditated the crime was pre-planned well in advance to to take this woman to a to a secluded area and assault her I also found again not in my brief I'm sorry in my preparations for oral argument an 11th Circuit case not controlling authority but again just an example it's u.s. versus Tapia 59 f-3rd 1137 it's a 1995 case from the 11th Circuit where they reversed the conviction where a more than minimal planning enhancement had been applied to an aggravated assault conviction in in that situation these are inmates in a county jail and a prisoner is brought into their cell area that they've all known for a long time they chatted up one of the ultimate defendants goes and makes some phone calls and learns that the the new inmate is about to testify perhaps you know this from your memos no I just know the scenario okay yeah this was obstruction of justice and I think retaliation were the charges but anyway he that one of the defendants went and phone call and learned that this new guy is going to be testifying in a federal drug case against one of their friends and so then they call this guy over and beat him up and they're charged with obstruction of justice and retaliation and the district court applied the more than minimal planning enhancement and the 11th Circuit vacated remanded and said no no no there was no elaborate scheme here this was not this was not significant planning no elaborate scheme no sophisticated plan yes he made the phone call and then collected his friends but this is not more than minimal planning it was in my interpretation an example of minimal planning which is what we're contending here that mr. Coombs engaged in minimal planning well maybe counsel you could tell me just connect the facts why is this insufficient in this case maybe instead of comparing it to other cases just help me understand why you think the facts in this case yeah in this case because factually what we know actually from the record is that and from the PSR it's paragraph the revised PSR paragraph 26 the defendant was in a women's restroom and he covered the lower part of his face with toilet paper in an effort to conceal his identity so why isn't it more than minimal planning it's minimal planning so he was in a someone comes in and shuts the door and so perhaps in the minute prior to the assault he figures well wrap my face in toilet paper and go bang my way in and assault this woman so it's not there's no evidence that he entered that bathroom with a plan to assault somebody there's nothing in the record so at the reason why I'm contending it's not it's not more than minimal planning is that it's minimal planning it was like at most a minute before the assault took place that he thought I guess to devise this sort of ill-conceived ill-conceived attempt to conceal his identity he didn't conceal his identity he didn't have a ski mask which had he had a ski mask or had he had some other way to conceal his identity I could see how that would be how that could constitute more than minimal plan the prison is prisons are filled with stupid criminals I mean that just as he fails at doing what he was trying to do doesn't mean he didn't do it well right no I don't why why okay so if he had kept that kept the difference I think in this situation in these facts yes that's an important distinction it wasn't that he concealed his identity he didn't conceal his well you said he was doped up he put on toilet paper he was trying to do that right perhaps but he didn't and so is the fact that he didn't succeed relevant the reason why that fact is relevant or important is because he didn't take significant affirmative steps to conceal his identity he sort of hurriedly and ineptly attempted to but didn't because he took no affirmative and that's an inference that we're making we're under a clear error standard right for the facts correct okay well for the fact the finding as to the adjustment is clear error the the factual findings for the adjustment yes but the application and interpretation what interpretation are we talking about whether he engaged in significant affirmative steps to conceal his identity okay well the court well part of this would be to suggest the finding that he did this hurriedly well let's assume that's an inference that's a factual inference maybe he just screwed it up and if he screwed it up then we're in the same place right there's no foot that would be viewed for clear error we'd interpret the hurriedly is not an inference the court has made right that's correct that's right okay now on the point about the fact I take it that part of this is being framed as a spontaneous act well how do we know it's spontaneous he's he's in the bathroom and and he could have been waiting and lying in wait there's no there's nothing in the records to suggest that that's not what he was doing is there no but there's nothing to suggest there's no no one who said yeah my son go in there 15 minutes earlier there's nothing to support and in fact the PSR didn't even say that it just said he was in the women's bathroom it didn't say he was in there waiting that's come later with you know subsequent iterations of what happened by the government but but the PSR simp quite simply said he's in the women's bathroom okay well if the this the clear error clearly erroneous standard is the deferential one the government has the burden to prove this granted but if he is in that restroom the court finds he's in the restroom court finds he wraps us around we if there is ambiguity as to whether he had been there in in there a long time or not in there a long time and the court finds that it's sufficient facts to find that he he was in there long enough to plan then under the standard what does one do with that I mean under the def what if I'm not making myself clear under the clearly erroneous standard what does one do with that I mean if the court finds that he's in there long enough and there's there's nothing in the record that would say he was he actually did there was any I'm not saying it was the the defendants burden I'm just saying there was no record evidence to suggest anybody went in there to that he went in there two seconds before it happened you're correct your honor but but the point is under this under even under the the error standard it is certainly minimal planning is it the question here is is it more than minimal planning and I would just say under this Tapia case and certainly under the other cases that are cited in my brief where there were aggravated assault cases on the Wind River Reservation that it was certainly more planning than what happened here yes was there was there a time period when he was in that bathroom he was obviously in the bathroom before this woman arrived how long we don't know was he waiting we don't know was he using the toilet we don't know is it a reasonable inference that he waited or that perhaps a minute expired before he went in and consolidated yeah that's a reasonable inference but but this does that make it more than minimal planning or just minimal well I look forward to reading Tapia and understanding that but let me let me ask you this if I may what what difference does it make whether it was in this situation whether it was a women's restroom or a men's restroom there was some discussion I think that was one of your factual errors that that the court made some some statement to the effect that the the restrooms were different when in fact they weren't different what difference does it make because because as far as as far as the record shows there's no basis really think there was a and I'm asking was that there was a sexual dimension to this I mean he beat her up but I mean there's no evidence that he tried to do anything sexual to her right that's correct okay uh I've got nine seconds you want me to go ahead well no you could do either way yeah I'll give you a little more time if you want it but so let's say we'll spot you 30 seconds so the signal or not oh we're not I was saying you could have rebuttal of 30 seconds if you want it if you want to go on oh I just gonna answer your question but what was the relevance of the that he was in the women's bathroom all right do it please yeah the relevance is that if you look at and it's it's cited in my brief or or detailed in the brief or the district court says and he was in the accommodations so the inference is he went in there and knew it was the women's bathroom there's really again no evidence in the red there the bathrooms are the same so he wouldn't have gone in and said oh hmm no urinals in here I must be in the women's bathroom no there it the reason it's important is because the implication from the district court is he that he went into the bathroom to thank you may it please the court counsel my name is Christine Martins and I represent the United States we're asking this court to affirm the district court finding both that the sentence was procedurally and substantively reasonable this court's review is for reasonableness using its familiar abuse of discretion standard and has has been already discussed the district court's factual findings will be reviewed for clear error and any legal decisions get de novo review when using that discretion so I'm going to start off by talking about these extra cases the 10th Circuit case and the 11th Circuit case I think it's probably a little dangerous to address cases that are outside of the briefing but just based off of what we've discussed here I think that 10th hits the nail on the head in terms of sufficient and necessary that problem certainly such a calculated attack would give you sufficient basis to find more than minimal planning but that doesn't answer the question for us what is necessary to find more than minimal planning so I think we can set that aside and then the 10th Circuit case where we're describing this as an obstruction case I would point the court to application note 2 for the more than minimal planning enhancement which is found at 2A2.2B1 so application note 2 tells us that the more than minimal planning enhancement also exists if significant affirmative steps were taken to conceal the offense other than conduct to which 3C1.1 applies in parentheses obstructing or impeding the administration of justice you're responding to the Tapia case yes well I at least I understand I I think we're flying blind unless you've already read Tapia I have not well then we're both flying blind and I don't know whether this is necessarily a good exercise to engage in but to the extent that we're going to do it I my impression from what defense counsel said was it wasn't based upon that overlap provision it was based upon actually finding that it was not minimal it was not more than minimal planning but I think that the point here is that our application note expressly circumstances that sound very similar to that so I don't think that's helpful here and I would agree with your honor but that application note I think is very helpful in figuring out exactly what it was the district court was doing when it was viewing the facts presented to it so that application note tells us that we need more than what is necessary for the commission of the offense in its simplest form and it goes on to give examples of taking actions to the offense including things like donning a ski mask or luring a victim but telling us also that simply waiting until no one is around to commit an offense is not enough on its own so we don't have to exclude those facts but we're not going to find it just basically or simply because a defendant has waited to commit an offense so looking at the facts here the district court specifically listed and you'll find this in the appendix at page 96 and 97 listed the facts that it relied on it relied on the fact that he was in the stall in the women's restroom that he waited until the victim MC was in the stall had closed the door that he wrapped his head with toilet paper and he barged through the door and I think that these facts support the finding of the district court well is it material that he that whether he was in a men's restroom or a women's restroom because as it turns out the the courts inference that he knew he was in a women's restroom is not founded based upon the configuration of the restroom so is it material at all I don't think it's material in this case but I wouldn't concede that the district court was wrong either at page 314 in the record you'll find a diagram submitted with is sensing memorandum that actually showed that the layout of these two bathrooms was in fact different so there's it's certainly what sense I think I had in mind what the court was getting at and so what difference is there that there's a closet in the men's bathroom that houses a water heater granted there were no urinals in the men's bathroom which we could infer that's what the district court made meant by accommodation pretty natural inference but I don't think that the record is crystal clear that the district court actually got it wrong and so when we're talking about the factual findings that's where we come back to the standard of review we're looking for clear error in those factual findings and there is something in the record that supports the idea that these restrooms were different and if the district court simply chose the wrong word to describe it or a word that would leave this court with some doubt about exactly what it was getting at I don't think that's quite enough to support clear error you're saying there was a room and in that there's record evidence about this different configuration that you're talking about all right well what from the what from that would have led the court to infer that he knew it was a women's restroom as opposed to a men's I mean that the fact that they have different configuration would not speak to that gender issue I don't think it would but certainly the court is allowed to take notice of the fact that these bathrooms are generally clearly labeled and defendant as respected or reflected excuse me in the PSR even had some post-secondary education so he certainly could read write understand the English language all those sorts of things to be able to realize that he was in the wrong bathroom well what I'm getting at is why is it does it really matter I mean because the assault has not been as far as I could tell from the record nobody's labeling a sexual assault so I mean does it really matter whether he knew he was in a women's restroom he could have just wanted to assault somebody that's absolutely true your honor I don't think that it makes or breaks this case whether he knew he was in the wrong bathroom or not so when we look at his actions here we have Coombs who is in a bathroom stall closed into a bathroom stall he is armed he has bear spray he has a two-inch pocket knife and he has those large rings on his fingers someone else even if he doesn't know it's a bathroom someone else comes into a bathroom and goes into their own stall and closes the door his response to that is to wrap his face in toilet paper in a makeshift disguise leave his bathroom stall beat down the book the door of the other bathroom stall to gain access to this person enter that stall spray that person with bear spray close the stall door behind him beat that person and even going so far as to hold her still to be beaten now when we look at that chain of events the question really is the necessary versus sufficient facts to find that more than minimal planning aspect and I think that that's where we can come back to that application note number two to this guideline here when we wait to commit this offense until no one else is around that's not enough by itself but we can certainly think about it and add it into the calculus and then the guideline gives us a specific example about donning a ski mask here defendant has wrapped his face in toilet paper specifically to conceal his identity and there was no other logical inference that the district court had to draw from that action this court pretty recently in Dickerson said that where the facts in a case support two views of the evidence that a district court is not going to abuse or excuse me clearly error by drawing one of those permissible inferences so certainly the district court was not required to draw any other inference and it was a logical inference that that step was affirmatively taken to conceal his identity furthermore district courts are not required to put every single reason that they find for a sentence on the clearly available from the facts your honor that he closed that bathroom door behind him I think that that could have played into the calculus here about whether he was affirmatively attempting to conceal this assault and the fact that was occurring and you know as the comment explains we can also look at the fact that he waited until no one was around well that's not sufficient on its own well we don't even know that do we I mean that there's a there's a question mark as to whether he waited I mean as I said that may go in your the favor of this judgment in light of clearly erroneous standard there's no evidence in the record as to how long he was in there is there there's no evidence in the record as to the amount of time he was in there but what it is in the record is that where there was actually no one else but all right well that's different than him waiting till there was no one around that implies somebody comes in he waits they go out then he does the assault we don't have that right we don't have that okay but based on what we do have I think that it's at least fair to to allow the district court to think about whether or not there was anybody else around when that assault actually occurred so all of those facts support the district courts finding that more than minimal planning was here in this offense and that's really the heart of the procedural question before this court under gall is whether or not the district court correctly calculated the guideline range based on that more than minimal planning enhancement so finding that there is sufficient evidence in the record to support the more than minimal planning enhancement then we would move on to the substantive question and it's worth noting that if the sentencing range is appropriately calculated then when we get to step two and look at the substance of the sentence we have a reasonableness that applies to that appropriately calculated guideline sentence he didn't even get the top of the guideline range right that's my no he got a middle guideline range your honor the guideline based on his criminal history category and the enhancements that applied was a 70 to 87 month guideline range below the government requested the 87 month sentence and he only got 78 and I think that it's also worth noting here that in both the defenses sentencing memorandum and before the district court the defense characterized what they were asking for as an extreme variance they went so far as to ask for a probationary sentence based on these facts and that's actually completely contrary to the guidelines not only an enormous downward departure but his sentences in zone D of that chart in the back of the book where we presume we're not going to allow a probationary sentence so that question on appeal the request on appeal has changed from a probationary sentence to a sentence of 51 months but again that gets us down outside of the guideline range and we would not only have to decrease for those two levels for the minimal planning enhancement we'd also have to get a downward departure on his in order to get to a sentence of 51 months we're talking about a variance we wouldn't have to do right right but if we were going to try and put it in the range 3553 and they could reach that result right yeah yeah yeah you know you I mean what you were talking about was working the guidelines as if it were departure but that's not what we're dealing with well and I think the only reason that I point those things out to the court is there's discussion in the other side's brief about his criminal history being overstated and when we look at that question under the the substantive question where we would be looking at a variance rather than a departure we aren't challenged here on appeal finding any actual mistake as to that calculation but essentially that we're asking for or the defendant is asking for sort of a discount on his criminal history in order to make that more reasonable on his variance and substantive argument but again I would say that the district court was well founded in looking at this particular offenders history finding that his history included multiple violent assaults that included weapons and imposing the sentence that it did both for specific in general deterrence and protection of the public if there are no further questions your honors the government respectfully requests that mr. Coombs his sentence be cases are submitted and we are in recess thank you